FRANK D. UPCHURCH, Jr., Judge,
dissenting.
This is an appeal from a final order of the Circuit Court for Volusia County dismissing appellants’ complaint with prejudice and dissolving a temporary injunction.
Appellee, Daytona Beach Ocean Towers, Inc., [Association] is a corporation formed to manage Daytona Beach Ocean Towers Condominium. There are 199 units in the condominium and they constitute the voting members of the condominium association (the corporation).
One of the features advertised by the developers of the condominium was a twenty-four hour telephone service afforded to each unit.[1] The association charged for the service only those unit owners who utilized it. At the time of the hearing, only twenty-four unit owners were making use of the service though it was the motivating factor for the purchase of several units by their owners, one of whom is blind. The question as to whether charging only those unit owners who desired the service was authorized by the condominium document was not raised. The practice, however, probably resulted in a much lower utiliza *231 tion and resulted in the service being a financial drain on the association.
The trial court held that the service could be terminated by the board of directors and that approval of the action by the membership was not necessary because “termination of said switchboard service was not a substantial or material alteration to the common elements of the condominium as defined by Florida Statutes.”
“Common elements” is defined by section 718.108, Florida Statutes (1979), to include:
1(d). The property and installations required for the furnishing of utilities and other services to more than one unit or to the common elements.
2. The declaration may designate other parts of the condominium property as common elements.
Section 718.113(2), provides:
There shall be no material alteration or substantial additions to the common elements except in a manner provided in the declaration.
If the telephone service and equipment is a common element, the board of directors could not terminate the service, but the members of the corporation would be required to amend the Declaration of Condominium as provided. In this declaration, the amending process requires recording in the Volusia County public records a modification signed by the owners of 150 or more units and by all owners and holders of first mortgage liens on any units. The difficulty in accomplishing the modification of the declaration is obvious.
The declaration provides:
It shall be the duty of the corporation to provide, through its agents and employees, for the administration, operation, maintenance, repair and replacement of the common elements.
The declaration does not specifically describe the telephone service or the telephone equipment as a common element. The declaration does define common elements as:
[A]ll of the real property, improvements, and facilities . . . which is not within any living unit . . (not including limited common elements) and shall include easement through units for conduits, pipes, ducts, plumbing, wiring and other facilities for the furnishing of utility service to units and common elements.
The floor plan included in the declaration has a space designated “telephone equipment.”
The controlling question, as touched upon above, is whether the twenty-four hour telephone system and service is to be considered a common element. If it is, its termination would require modification of the declaration. Appellee contends that because the telephone switchboard is leased from the telephone company it cannot be a common element as defined in the law or the declaration. It is well established that recreation leases or other analogous service contracts may be deemed a common element. Ackerman v. Spring Lake of Broward, 260 So.2d 264 (Fla. 4th DCA 1972). In the case before us, the telephone switchboard only provides service within the condominium, however, the same principles would apply if all telephone service was dependent on the switchboard.
Under the powers allocated to the board of directors of the corporation, the board was authorized:
[T]o provide from the proceeds of the assessments for the operation, administration, maintenance, repair, improvements, replacement, insurance and utilities for said property.
Using appellee’s reasoning, if the switchboard was owned it would be a common element and the board would be required to maintain it. The board would not be able to terminate the service without approval of the unit owners as provided in the declaration. At some point, the switchboard would become obsolete or no longer economical to repair. At that point, the board of directors may decide to replace the switchboard with leased equipment. Now, having converted to leased equipment, could the board of directors terminate the service?
*232 In my opinion, the question, whether the board of directors is authorized to eliminate a vital service, should not turn on the basis that a part of the equipment utilized in furnishing that service is leased. This is the position the majority has taken. Therefore, I must dissent.

. All incoming telephone calls do not go through the switchboard and outside telephone service is also available to all units. Access to dle operator can also be had by dialing the condominium office number on the outside telephone system.